UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
5:18-cv-00078-FDW

| | |
|---|---|
| DUANE L. FOX, ) | |
| *A/K/A* DUANE LEROY FOX, ) | |
| *A/K/A* JENNIFER ANN JASMAINE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| FNU KINLISKY, CHRISTOPHER P. MURY, ) | |
| FNU GOING, KENNETH RAYMOND, FNU ) | |
| FOX, ELIZABETH D. WALLACE, FNU ) | |
| HARRIS, ROBERT E. CAMPBELL, JAMES D. ) | |
| FOSTER, JONATHAN D. FRANKLIN, ) | |
| DANIEL REDDING, FNU BYRD, JANE DOE ) | |
| 1-4, JOHN DOE 1-4, FNU PITTS, FNU ) | |
| HOLLER, FNU CRUMP, FNU MILLER, ) | |
| MCCURRAY, FNU DYE, FNU BEAVER, FNU ) | |
| ANDERSON, FNU HESTER, FNU BROWN, ) | |
| FNU DUNLAP, FNU BLANKETSHIP, FNU ) | |
| O'BRIAN, FNU COOK, FNU TOWNSLIN, ) | |
| FNU TEEK, ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court upon initial review of Plaintiff Duane L. Fox's pro se Complaint (Doc. No. 1).[1] See 28 U.S.C. § 1915(e). Also before the Court are Plaintiff's Motion for Appointment of Counsel (Doc. No. 6), Motion for Additional Prayer for Relief (Doc. No. 8), and Motion to Increase the Limit for Interrogatories (Doc. No. 12).

**I.    BACKGROUND**

---

[1] Plaintiff has filed all pleadings and motions under the name Jennifer Ann Jasmaine, refers to herself as Ms. Jasmaine, and uses female pronouns "she" and "her" when referring to herself. Accordingly, the Court also refers to Plaintiff using those pronouns, except to the extent it quotes records that do otherwise. Plaintiff is incarcerated under the name "Duane L Fox," however. See North Carolina Department of Public Safety Offender Public Information, https://webapps.doc.state.nc.us/opi/offendersearch.do?method=view (search Jasmaine, Jennifer, OPUS # 1426625, last viewed Mar. 20, 2019). Therefore, the Court uses the name Duane L. Fox in the docket, the caption of orders, and Plaintiff's mailing address to better ensure Plaintiff's legal mail reaches her.

1

Plaintiff, a prisoner of the State of North Carolina, has filed a Complaint pursuant to 42 U.S.C. § 1983, naming 36 current and/or former employees of the North Carolina Department of Corrections ("NCDPS") as Defendants. She claims that while she was housed at Alexander Correctional Institution ("ACI"), one or more of these Defendants, at various specified and unspecified times, violated one or more of the following rights:

> Eighth Amendment, Due Process, Harassment, deliberate Indifference, First Amendment, Fourteenth Amendment, Religious Land Use and Institutionalized persons Act (RLUIPA), Free Exercise Clause, Establishment Clause[,] Freedom of Discrimination, Right to be Free from Cruel and Unusual Punishment, PREA[,] 42 U.S.C. 15601(13), 42 U.S.C. 15602(1), Fourth Amendment – unreasonable searches

(Compl. 2-3, Doc. No. 1.)[2] Plaintiff currently is housed at Lanesboro Correctional Institution ("LCI"). See NCDPS Offender Public Information website, supra, at n.1.

## II. FEDERAL RULES OF CIVIL PROCEDURE 18, 20(A)(2) AND 21

Under Rule 18(a) of the Federal Rules of Civil Procedure, a plaintiff may bring multiple claims, related or not, in a lawsuit against a single defendant. See Fed. R. Civ. P. 18(a). However, to name other defendants in the same lawsuit, the plaintiff must satisfy Rule 20(a)(2), which permits joinder of multiple defendants only where the right to relief asserted against them arises out of the same transaction or occurrence and concerns a common question of law or fact. See Fed. R. Civ. P. 20(a)(2). In other words, "a plaintiff may join multiple defendants in a single action only if the plaintiff asserts at least one claim for relief against each of them *that arises out of the same transaction or occurrence and presents a question of law or fact that is common to all of them*." McCoy v. Bazzle, 4:07-cv-3562-PMD-TER, 2008 WL 4280386, at *5 (D.S.C. Sept. 15, 2008) (emphasis added). To remedy improperly joined parties, the court should not

---

[2] Unless otherwise specified, page numbers in citations to the record in this Order refer to the page number of the assigned by the Court's electronic case filing (ECF) system, and not to page numbering, if any, specified on the face of the underlying document.

dismiss the action outright, but "the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. The court may act upon motion by a party or sua sponte. Id.

The Complaint consists of 194 pages of repetitive allegations against individual Defendants that fall into the following categories: 1) deliberate indifference to Plaintiff's serious medical needs (physical) (Defendants Kinlisky, Fox, Harris, Byrd, Jane Doe #1-#4, John Doe #1-#3); 2) deliberate indifference to Plaintiff's serious medical needs (mental) (Defendants John Doe #4, Crump, O'Brian); 3) universal denial at all levels of Plaintiff's grievances (Defendants Mury/Murry,[3] Raymond, Wallace, Campbell, Foster, Franklin, Dye, Beaver, Anderson); 4) singling out Plaintiff for wearing pants that are too tight (Defendants Going, Holler, Miller, Dye, Beaver, Anderson, Townslin); 5) no reprisal for false PREA filed against Plaintiff by another inmate (Defendants Pitts, Holler, Miller); 6) denial of Plaintiff's grievance about attempted purchase of art supplies (Defendant Miller); 7) deliberate indifference to Plaintiff's physical safety (Defendants Pitts, Blanketship, Holler, Miller, McCurray, Dye, Beaver, Anderson, Hester, Dunlap, Cook, Townslin); 8) violations of Plaintiff's right to worship (Wicca) (Defendants Redding, Brown); and 9) failure to credit $2.00 to Plaintiff's prison trust account for return of a purchase (Teek). The Court finds that Plaintiff's claims for relief alleging deliberate indifference to serious medical needs, both physical and mental, arguably arise out of the same "transaction or occurrence" and present a common question of law or fact. None of the other categories of claims, to the extent they are actionable, are related to the medical claims or, in most instances, each other.

It appears that these categories of claims are really separate lawsuits combined together for no apparent reason except to avoid paying filing fees. Since there appears to be no legitimate

---

[3] Plaintiff spells this Defendant's name both ways in the Complaint.

basis for joining all these Defendants and claims together, the Court finds that the claims against all but those named in the medical-related claims should be severed from this action. In so finding, the Court notes that the potential prejudice to the individual Defendants if their cases were to be tried together, given the wide variety of unrelated claims against them, is obvious.[4] Nevertheless, for the sake of judicial economy, the Court shall dismiss several of Plaintiff's claims that on their face are not actionable and dismiss the remaining Defendants who are not named in Plaintiff's claims alleging deliberate indifference to serious medical needs, see Fed. R. Civ. P. 21.

The Court notes the Complaint also includes allegations about various issues that Plaintiff makes no effort to tie to any named Defendant. For example, in pages 163-167, Plaintiff discusses gender dysphoria and its treatment and makes a conclusory assertion that "Defendants put off and outright denied [her] . . . access to healthcare for GD." (Compl. 165 ¶ 7.) Plaintiff does not identify which Defendant(s) denied her access to treatment for GD, the type of treatment she sought for GD, or when she was denied access to treatment for GD at ACI. In other words, although she claims Defendants Kinlisky, Fox, Harris, Byrd, Jane Doe #1-#4, John Doe #1-#4, Crump, and O'Brian were deliberately indifferent to her serious medical needs, she does not allege any denied her access to treatment for GD. The Court finds the Complaint does not raise a claim for relief related to GD. The Court also finds the Complaint does not raise a claim for relief based on her designation as a member of a security risk group (Compl. 171 ¶ 7, 172 ¶ 9), theft of some of her possessions (172-173 ¶ 11), or the mail room losing her "MAD"

---

[4] The Court also notes that the failure to file these cases as separate lawsuits when they are in fact separate lawsuits causes the filing statistics in this district to be inaccurate. Such statistical data is extremely important as it determines the resources that are necessarily allotted to this district. Thus, the misfiling of these cases could result in less resources being allocated to the district than it is entitled to which, of course, could have negative consequences.

4

magazine (Compl. 173 ¶ 12, 175 ¶ 7).

### III. STANDARD OF REVIEW

Because Plaintiff is a prisoner proceeding in forma pauperis (Doc. No. 11), the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In its frivolity review, the Court must determine whether the Complaint raises an "indisputably meritless legal theory," Denton v. Hernandez, 504 U.S. 25, 32 (1992), or is founded upon clearly baseless factual contentions, such as "fantastic or delusional scenarios," Neitzke v. Williams, 490 U.S. 319, 327-28 (1989).

While a pro se complaint must be construed liberally, see Haines v. Kerner, 404 U.S. 519, 520 (1972), the liberal construction requirement will not permit a district court to ignore a plaintiff's clear failure to allege facts which set forth a claim that is cognizable under federal law, see Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A complaint fails to state a claim for relief if after accepting all well-pleaded allegations in the complaint as true and drawing all reasonable factual inferences from those allegations in the plaintiff's favor, the complaint does not contain enough facts to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must articulate facts that, when accepted as true,

demonstrate he has stated a claim entitling him to relief.  Id.

## IV:   DISCUSSION

To state a claim under § 1983, Plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States[ ] and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988).

### A. Claims Subject to Immediate Dismissal

#### 1. Tight Pants

Plaintiff alleges Defendants Going, Holler, Miller, Dye, and Townslin, identified as ACI corrections officers, singled her out for wearing pants that were too tight and "antagonized" and/or "harassed" her about it and/or wanted her to wear baggy pants.  (Compl. 30-31; 90 ¶ 4; 97-98 ¶ 4; 113 ¶ A; 155-156 ¶ 2.)  She does not specify how she was antagonized or harassed, except to assert in the case of Defendant Going that she was locked in her cell and required to eat on the unit instead of going to the dining hall because "they" wanted her to change into a larger pants size.  (Compl. 31 ¶ D.)  Otherwise, Plaintiff's allegations are that none of the Defendants singled out other inmates for wearing pants that sag below their backsides, that homosexual inmates were allowed to wear tight pants, and that female nurses, guards, and administrative staff were allowed to wear tight pants.  Plaintiff contends Defendants Beaver and Anderson, identified as ACI Superintendent and Assistant Superintendent, respectively, are liable because of their supervisory positions over the other Defendants.  (Compl. 123 ¶ A; 133-134 ¶ A.)

Plaintiff does not identify a constitutional right at issue.  She does not have a constitutional right to choose either the type or size of her prison clothing, and she has failed to identify any prison or State policy that creates a liberty interest in allowing her to wear tight pants.  A claim by Plaintiff that Defendants violated her Eighth Amendment right against cruel

and unusual punishment by not allowing her to wear tight pants would be frivolous.

The Court finds Plaintiff's allegations against Defendants are frivolous and that she has failed to state a claim upon which relief may be granted. Accordingly, her claims against Defendants Going, Holler, Miller, Dye Townslin, Beaver, and Anderson related to her tight pants is dismissed with prejudice as frivolous and for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B).

### 2. Art Supplies

In this Claim, Plaintiff alleges she attempted to purchase colored pencils and a hardback art pad but was told by her case manager, FNU Avery, that she could not buy them. Plaintiff filed a grievance, and Defendant Miller, identified as an ACI corrections officer, denied it. Plaintiff asserts that in her grievance response, Miller quoted the wrong prison policy. (Compl. 101-102 ¶¶ 18-19.)

This Claim does not implicate any constitutional right and is frivolous on its face. Therefore, Plaintiff's claim against Defendant Miller for denying her grievance is dismissed with prejudice as frivolous and for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B). Plaintiff does not name FNU Avery as a defendant in this action.

### 3. Denial of Grievances

The NCDPS has a three-step administrative remedy procedure governing the filing of grievances. See, e.g., Moore v. Bennette, 517 F.3d 717, 721 (4th Cir. 2008). The NCDPS' Administrative Remedy Procedure ("ARP") provides that any inmate in NCDPS custody may submit a written grievance on Form DC-410. If the inmate is not satisfied with the decision reached at the step one level of the grievance process, he may request relief from the Facility Head. If the inmate is not satisfied with the decision reached by the Facility Head (step two), he

may appeal his grievance to the Secretary of NCDPS through the Inmate Grievance Examiner ("IGE"), who is overseen by the Inmate Grievance Resolution Board ("IGRB") (step three). A decision by the IGE or a modification by the Secretary of NCDPS constitutes the final step of the ARP.

Plaintiff alleges Defendants Mury/Murry and Wallace, identified as grievance examiners, each received several of her grievances and, according to Plaintiff, no matter the issue raised "[came] up with some crazy reason" to deny relief. (Compl. 29 ¶ 2; 37 ¶ 6.) Plaintiff alleges generally that the "grievance procedure" is biased because her grievances were always denied. (Compl. 29 ¶¶ 3-4; 37-38 ¶¶ A-B.)

With respect to Defendants Raymond, Campbell, Foster, and Franklin, identified as "part of" the IGRB, Plaintiff alleges that at step three of the grievance process, the IGRB simply agreed with the conclusion reached at step two for every grievance she appealed. (Compl. 32; 40 ¶ 8; 41 ¶ 9; 42 ¶ 10.) Plaintiff alleges generally that the IGRB "never does an investigation," always agrees with the step two decision, regardless of the issues raised, and was responsible for not holding the ACI officers accountable for violating Plaintiff's rights. (Compl. 32 ¶¶ A-C; 40-41 ¶¶ A-C; 41-42 ¶¶ A-C; 42-43 ¶¶ A-B.) Plaintiff also alleges Defendants Dye, identified as an ACI assistant superintendent, Beaver, and Anderson are liable because of their supervisory roles at ACI. (Compl. 112 ¶ A; 122 ¶ A; 132-133 ¶¶ A-B.)

"[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Thus, Plaintiff has failed to state a claim upon which relief may be granted, and this Claim is dismissed as a matter of law. § 1915(e)(2)(B).

**B. Deliberate Indifference to Serious Medical Needs**

1. **Physical**

A prisoner has a constitutional right to the medical care necessary to address his serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 103-04 (1976). A prison official's "deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment." See Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014). The necessary showing of deliberate indifference can be manifested by prison officials in responding to a prisoner's medical needs in various ways, including intentionally denying or delaying medical care, or intentionally interfering with prescribed medical care. See Estelle, 429 U.S. at 104-05. A judicial assessment of deliberate indifference has two aspects—an objective inquiry and a subjective inquiry. See Jackson, 775 F.3d at 178.

To satisfy the objective inquiry of a deliberate indifference claim, "the inmate's medical condition must be serious—one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (internal quotation marks omitted). A medical condition is shown as objectively serious when it "would result in further significant injury or unnecessary and wanton infliction of pain if not treated." See Gayton v. McCoy, 593 F.3d 610, 620 (7th Cir. 2010).

To satisfy the subjective inquiry of a deliberate indifference claim, the plaintiff must show that the public official "knows of and disregards an excessive risk to inmate safety or health." See Farmer v. Brennan, 511 U.S. 825, 837 (1994). A deliberate indifference claim must satisfy a high bar, and that bar is not met by showing that "an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." See Jackson, 775 F.3d at 178.

### a. Defendant Kinlisky

Plaintiff alleges that Kinlisky was the doctor at ACI. (Compl. 26 ¶ 1.) According to Plaintiff, during the unspecified nine-month period she was incarcerated at ACI, she put in 29 sick calls and never saw the doctor for any medical issue. (Compl. 26 ¶ 1; 33-34 ¶ D; 49 ¶ 1.) She alleges further that the ACI nurses told her either that the doctor determines whether she will see an inmate or that an inmate has to be seen three times by a nurse or other practitioner for the same ailment before the doctor would see the inmate. (Compl. 26 ¶ 1; 34 ¶¶ E-F; 49-50 ¶¶ 2-3.)

Plaintiff claims Kinlisky was biased against her as evidenced by the fact that Kinlisky never saw her for any medical issue. (Compl. 26 ¶ 1.) Plaintiff also claims her Eighth Amendment rights were violated because: 1) she had a serious medical need and Kinlisky refused to see her no matter how many times she went to sick call; and 2) Ms. Kinlisky's deliberate indifference caused her injury. (Compl. 27 ¶ B.)

Plaintiff's claim fails to survive initial review. The claim against Kinlisky does not contain enough facts to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 555, 570. First, Plaintiff does not identify a serious medical condition that required her to see Kinlisky. Second, Plaintiff does not allege she was not seen by any medical care provider; her complaint is that was not seen by Kinlisky personally. She alleges no facts from which the Court may reasonably infer that she needed treatment by a doctor rather than a nurse or other practitioner. Nor does she allege any facts from which the Court may reasonably infer Kinlisky had actual subjective knowledge of Plaintiff's unidentified serious medical condition and had actual subjective knowledge of the excessive risk posed by her failure to treat Plaintiff personally. Finally, although Plaintiff asserts she was injured by Kinlisky's failure to treat her personally, Plaintiff does to identify how she

was injured.

In sum, Plaintiff has failed to state a claim for relief against Kinlisky. This claim shall be dismissed without prejudice to Plaintiff's ability to bring a properly pleaded claim against Kinlisky.

### b. Defendants Fox, Harris, Byrd, Jane Does #1-#4, John Does #1-#3

Plaintiff alleges the following: *Defendant Fox*, identified as a nurse at ACI, refused on an unspecified date to issue Plaintiff medical headphones that had been ordered by a doctor at another prison and then falsely stated in response to Plaintiff's grievance that the doctor's request for the headphones had been denied (Compl. 33 ¶¶ 5, A); *Defendant Harris*, identified as a nurse at ACI, refused on Aug. 22, 2017, to issue Plaintiff lace-up ankle braces for his weak ankles even though they had been approved by a doctor (Compl. 38 ¶7, 39 ¶ B); *Defendant Byrd*, identified as a nurse at ACI, refused on an unspecified date to issue Plaintiff medical headphones (Compl. 49 ¶ 12); *Defendants Jane Doe #1-#4*, identified as nurses at ACI, refused on unspecified dates to issue Plaintiff medical headphones (Compl. 53 ¶ 13; 58 ¶ 14; 62 ¶ 15; 66 ¶ 16); *Defendants John Doe #1-#2*, identified as nurses at ACI, refused on unspecified dates to address Plaintiff's bad back (degenerative disc L4, L5), bad ankles, and poor circulation, and ignored what Plaintiff told them about her ailments (Compl. 70 ¶ 17; 74 ¶ 18); and *Defendant John Doe #3*, identified as a nurse at ACI, refused on an unspecified date to address Plaintiff's bad back (degenerative disc L4, L5), medical headphones, bad ankles, and poor circulation, and ignored what Plaintiff told him about her ailments (Compl. 78 ¶ 19).

Plaintiff has alleged that each of these Defendants denied her at least one medical device ordered by a physician. Moreover, Plaintiff has alleged there was at least one up-to-date physician order in her medical file authorizing prison healthcare providers to issue her the

11

medical device(s). Drawing all reasonable inferences in Plaintiff's favor, the Court finds Plaintiff has sufficiently alleged she suffers from at least one medical condition diagnosed by a physician as requiring treatment, and that Defendants were on notice of that fact. These claims survive initial review.

### 2. Mental

According to the Complaint, Plaintiff is a "transsexual [who] believes that she is cruelly trapped within a body incompatible with her real gender identity." (Compl. 82 ¶ 4.) Plaintiff asserts she was uncomfortable talking to a male therapist "because of her past and recent sexual abuse that she had to endure." (Compl. 81 ¶ 20; 94 ¶ 23; 150 ¶ 33.) Plaintiff alleges she told Defendants John Doe #4, identified as a psychologist at ACI, Crump, identified as head of mental health at ACI, and O'Brian, identified as a male therapist at ACI, that she was uncomfortable talking to a male therapist, asked each to assign her a female therapist, and each denied her request, forcing her to be treated by a male therapist or forego therapy entirely. (Compl. 82 ¶ 1; 94-95 ¶¶ 1-3; 151 ¶¶ 1-2.) Plaintiff claims Defendants' actions delayed her access to mental health treatment and made her mental health problems worse. (Compl. 83 ¶¶ 5-6; 94-95 ¶ 1; 151 ¶¶ 1-2.)

"Courts treat an inmate's mental health claims just as seriously as any physical health claims." DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018) (citing Bowring v. Godwin, 551 F.2d 44, 47 (4th Cir. 1977)). The Court finds Plaintiff has sufficiently alleged deliberate indifference to her serious mental health needs to survive initial review.

### V. APPOINTMENT OF COUNSEL

In support of her motion for appointment of counsel, Plaintiff states she is unable to afford counsel, is proceeding in forma pauperis, is incarcerated, and does not have access to a

law library or legal assistance. She also contends the issues in the case are complex and that counsel would be better able to present evidence and cross-examine witnesses. (Doc. No. 6.)

There is no absolute right to the appointment of counsel in civil actions such as this one. Therefore, a plaintiff must present "exceptional circumstances" to justify the court seeking the assistance of a private attorney for a plaintiff who is unable to afford counsel. Miller v. Simmons, 814 F.2d 962, 966 (4th Cir. 1987). This case does not present exceptional circumstances that justify the appointment of counsel. Consequently, Plaintiff's motion for the appointment of counsel will be denied. Should this case proceed to trial, the Court shall reconsider the issue of appointing counsel for Plaintiff.

### VI. MOTION FOR ADDITIONAL PRAYER FOR RELIEF

In this Motion, Plaintiff seeks to add two requests for relief to her Complaint: 1) "a declaration that the act or omission described herein violated her rights under the Constitution and laws of the United States;" and 2) removal from the gang list. (Doc. No. 8.) This Motion shall be denied because Plaintiff already seeks various forms of declaratory and injunctive relief in her Complaint, and she does not raise a claim in her Complaint that one or more of the named Defendants violated her rights under the Constitution by placing her on the gang list.

### VII. MOTION TO INCREASE THE NUMBER OF INTERROGATORIES

In this Motion, Plaintiff seeks to increase the number of interrogatories one party may pose from the 50 she asserts are allowed under North Carolina law to 720, so that she may pose at least 20 to each Defendant. (Doc. No. 12.) The Court has not entered a discovery schedule in this case. If the Court does enter such an order, it shall do so in compliance with the Federal Rules of Civil Procedure and the Local Rules of Civil Procedure. This Motion shall be denied.

### VIII. ORDER

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion for Appointment of Counsel (Doc. No. 6) is **DENIED**;

2. Plaintiff's Motion for Additional Prayer for Relief (Doc. No. 8) is **DENIED**;

3. Plaintiff's Motion to Increase the Number of Interrogatories (Doc. No. 12) is **DENIED**;

4. Plaintiff's claims against Defendants *Going, Holler, Miller, Dye, Townslin, Beaver, and Anderson* that she was singled out for wearing her pants too tight is **DISMISSED** with prejudice as frivolous and for failure to state a claim upon which relief may be granted, see 28 U.S.C. § 1915(e)(2)(B);

5. Plaintiff's claim against Defendant *Miller* for not letting her buy the art supplies she wanted is **DISMISSED** with prejudice as frivolous and for failure to state a claim upon which relief may be granted, see 28 U.S.C. § 1915(e)(2)(B);

6. Plaintiff's claims against Defendants *Mury/Murry, Wallace, Raymond, Campbell, Foster, Franklin, Dye, Beaver, and Anderson* for denying all her grievances is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted, see 28 U.S.C. § 1915(e)(2)(B);

7. The Clerk of Court is directed to **DISMISS** the following Defendants from this action: *FNU Pitts, FNU Blanketship, FNU McCurray, FNU Hester, FNU Dunlap, FNU Cook, FNU Redding, FNU Brown, and FNU Teek*, see Fed. R. Civ. P. 21;

8. Plaintiff's claim that Defendant *Kinlisky* was deliberately indifferent to her serious medical needs is **DISMISSED without prejudice**;

9. Plaintiff may proceed with her claims against Defendants *Fox, Harris, Byrd, Jane Doe #1-#4, John Doe #1-#4, Crump and O'Brian* for deliberate indifference to her

serious medical needs, physical and mental;

10. All remaining claims in the Complaint are **DISMISSED without prejudice** to Plaintiff's ability to raise them in separate lawsuits; and

11. The Clerk of Court shall commence the procedure for waiver of service as set forth in Local Civil Rule 4.3 for Defendants *FNU Fox, FNU Harris, FNU Byrd, Jane Doe #1-#4, John Doe #1-#4, FNU Crump and FNU O'Brian*, who are alleged to be current or former employees of the North Carolina Department of Public Safety.

**SO ORDERED.**

Signed: March 25, 2019

Frank D. Whitney
Chief United States District Judge