## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION
## CIVIL CASE NO. 5:18-cv-00078-MR

| | |
|---|---|
| JENNIFER ANN JASMAINE f/k/a Duane Leroy Fox,      )<br><br>          Plaintiff,     )<br><br>vs.     )<br><br>CHRISTINE FOX, et al.,     )<br><br>         Defendants.    )<br>_____ ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** comes before the Court on a Motion for Summary Judgment by Defendants Fox, Crump, Harris, and O'Brien. [Doc. 45].

## I.  PROCEDURAL BACKGROUND

On May 7, 2018, Plaintiff Jennifer Ann Jasmaine ("Plaintiff"), proceeding *pro se*, filed an unverified Complaint pursuant to 42 U.S.C. § 1983 against 28 named Defendants and eight Doe Defendants.  [Doc. 1]. On initial review, the Court dismissed all but Defendants Fox, Harris, Byrd, Crump, O'Brien,[1] Jane Does #1-4, and John Does #1-4, against whom Plaintiff made allegations related to her physical and mental healthcare while

_____

[1] In her Complaint, Plaintiff spelled this Defendant's last name as "O'Brian," which is incorrect.  The Court will instruct the Clerk to update the docket with the correct spelling.

she was incarcerated at Alexander Correctional Institution ("Alexander") in Taylorsville, North Carolina. [Doc. 13]. The Court found that the claims against the 23 dismissed Defendants were either wholly unrelated to the claims of the surviving Defendants and/or did not state claims for relief in the first place. [Id. at 3-4, 14-15]. Plaintiff sued all Defendants in their individual and official capacities. [Doc. 1 at 9-26].

Plaintiff alleged that Defendant Christine Fox, identified as a nurse at Alexander, refused on an unspecified date to issue Plaintiff medical (over the head) headphones that had been ordered by a doctor at another prison. Plaintiff further alleged that Defendant Fox lied in response to Plaintiff's grievance, claiming that the doctor's request for the headphones had been denied. [Id. at 33]. Plaintiff alleged that Defendant Renee Harris, identified as a nurse at Alexander, refused on August 22, 2017 to issue Plaintiff lace-up ankle braces even though a Utilization Review (UR) Request[2] for the braces had been approved. [Id. at 38-39].

As to Defendant Terri Byrd, M.D., incorrectly identified as a nurse at Alexander, and Jane Doe Defendants #1-4, Plaintiff alleged that they refused, on unspecified dates, to issue Plaintiff medical headphones. [Id. at

---

[2]A Utilization Review (UR) Request must be submitted by providers where services require precertification or prior approval.

49, 53, 58, 62, 66]. Plaintiff alleged that John Doe Defendants #1 and #2, identified as nurses at Alexander, refused on unspecified dates to address Plaintiff's bad back, bad ankles, and poor circulation and ignored Plaintiff's complaints about these conditions. [Id. at 70, 74]. In addition to the same complaints alleged against John Does #1 and #2, Plaintiff alleged that John Doe #3, identified as a nurse at Alexander, refused to issue Plaintiff medical headphones. [Id. at 78].

Plaintiff generally alleged that over a period of nine months she submitted 29 sick call requests and that she never saw a doctor during that time for any of her sick calls. [See Doc. 1 at 33-34]. Finally, she alleged that nurses at Alexander, including apparently Defendants Fox, Jane Does #1-4, and John Does #1-3, told her that the doctor decides whether she will see you or that Plaintiff "had to be seen for the same complaint 3x before she could see the doctor again."[3] [See id. at 34].

Plaintiff's claims against Defendant Rita Crump, identified as the head of mental health at Alexander; Kevin O'Brien, identified as a male therapist at Alexander; and John Doe #4, identified as a psychologist at Alexander; relate to Plaintiff's mental healthcare. Plaintiff alleged that she is a

---

[3] Plaintiff makes these allegations against Defendant Byrd as well. [Doc. 1 at 49-50]. Byrd, however, is a doctor and, therefore, could not have advised Plaintiff as alleged.

"transexual [who] believes that she is cruelly trapped within a body incompatible with her real gender identity." [Id. at 82]. Plaintiff alleged that she told Defendants Crump, O'Brien, and John Doe #4 that she was uncomfortable talking to a male therapist due to past and recent sexual abuse and asked that she be assigned a female therapist. Plaintiff further alleged that these Defendants all denied this request and that Plaintiff was forced to either be treated by a male therapist or forego therapy entirely. [Id. at 81-82, 94-95, 150-151].

Plaintiff's Complaint survived initial review based on her claims of deliberate indifference to her serious medical needs under the Eighth Amendment against Defendants Fox, Harris, Byrd, Crump, O'Brien, Jane Does #1-4, and John Does #1-4. [Doc. 13]. The Court ordered the Clerk to initiate the procedure for waiver of service in Local Civil Rule 4.3 for Defendants. [Id. at 15]. On May 24, 2019, Defendants Crump, Byrd, Fox, O'Brien, Harris, and "Jane Doe" filed executed Waivers of Service. [Doc. 16]. The "Jane Doe" Defendant who executed a Waiver of Service was Yutokia T. Lipford. [Id. at 5]. At the same time, the North Carolina Department of Public Safety (NCDPS) filed a notice under seal identifying and providing the last known addresses for Jane Does #1, #3, and #4. [Doc. 17]. In this notice, the NCDPS also referenced Jane Doe #2 as the Jane

Doe Defendant who had waived service, namely, Yutokia Lipford. [Id.]. Jane Doe #1 was identified as Jennifer E. Tilley, Jane Doe #3 was identified as Hilda Accord, and Jane Doe #4 was identified as Leslie Norman. [Id.]. By inadvertence, none of these Defendants were substituted for the Jane Doe Defendants in the docket in this matter and, despite having their last known addresses, Defendants Tilley, Accord, and Norman were never served with summons and complaint. The NCDPS never provided information for service on the John Doe Defendants and Plaintiff never pursued service on them. Defendant Lipford, still identified as Jane Doe, answered the Complaint on August 22, 2019 with Defendants, Crump, Fox, Harris, and O'Brien. [Doc. 33]. Defendant Byrd moved to dismiss the Complaint for Plaintiff's failure to state a claim for relief against her. [Doc. 30]. After entering an Order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), allowing Plaintiff time to respond, [Doc. 35], the Court granted Defendant Byrd's unopposed motion to dismiss, [Doc. 36]. The Court found that Plaintiff failed to allege that her medical needs, including any needs implicated in her 29 sick calls, were "serious," as required to state an Eighth Amendment deliberate indifference claim. The Court also noted that Plaintiff necessarily failed to allege that Defendant Byrd was deliberately indifferent to a serious medical need. [Id. at 5].

5

On January 11, 2021, Defendants Crump, Fox, Harris, and O'Brien moved for summary judgment. [Doc. 45]. Defendant Jane Doe #2 did not join in the motion. In support of their summary judgment motion, Defendants Crump, Fox, Harris, and O'Brien submitted a memorandum; the Affidavits of Defendants Harris, O'Brien, and Crump; and select medical records of Plaintiff. [Doc. 46, Doc. 47-1 through 47-4]. Thereafter, the Court entered a Roseboro Order, advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 48]. Plaintiff was specifically advised that she "may not rely upon mere allegations or denials of allegations in [her] pleadings to defeat a summary judgment motion." [Id. at 2]. Rather, she must support her assertion that a fact is genuinely disputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." [Id. (citing Fed. R. Civ. P. 56(c)(1)(a))]. The Court further advised that:

> An affidavit is a written statement under oath; that is, a statement prepared in writing and sworn before a notary public. An unsworn statement, made and signed under the penalty of perjury, may also be submitted. Affidavits or statements must be presented by Plaintiff to this Court no later than

> fourteen (14) days from the date of this Order and
> must be filed in duplicate.

[Id. at 3-4 (citing Fed. R. Civ. P. 56(c)(4))]. Plaintiff has submitted nothing in response to Defendants' summary judgment motion.

This matter is now ripe for adjudication.

## II.    STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there

7

is a genuine issue for trial." Id. at 322 n.3.  The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment.  Id. at 324.  Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record.  See id.; Fed. R. Civ. P. 56(c)(1)(a).  Courts "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."  Eastern Shore Mkt. Inc. v. J.D. Assoc.'s, LLP, 213 F.3d 174, 180 (4th Cir. 2000).  The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party.  Anderson, 477 U.S. at 255.  "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'"  Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  As the Supreme Court has emphasized,

8

"[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007).

## III.  FACTUAL BACKGROUND

The uncontroverted forecast of evidence in the light most favorable to the nonmovant is as follows:

Defendant Crump is a Psychological Services Coordinator for the NCDPS and has been employed by the NCDPS since 2000.  [Doc. 47-4 at ¶ 2: Crump Aff.].  In her role, Crump supervises other clinicians in providing behavioral health services to offenders.  Crump also provides these services to offenders herself.  [Id. at ¶ 3].  Defendant O'Brien is a Psychologist at Alexander and has been employed by the NCDPS since 2004.  [Doc. 47-3

9

at ¶ 2: O'Brien Aff.].  Defendant O'Brien provides behavioral health services to offenders.  [Id. at ¶ 3].

On January 25, 2017, Plaintiff arrived at Alexander.  [Id. at ¶ 8].  At the time, she was assigned to Defendant O'Brien for psychological care to maintain an even caseload distribution among the mental health clinicians at Alexander.  [Id.; Doc. 47-4 at ¶ 6].  At Plaintiff's first appointment with Defendant O'Brien on February 2, 2017, she stated that she did not want to speak with O'Brien because he is male and, due to a history of abuse by males, she could not work with a male therapist.  [Doc. 47-3 at ¶ 9].  Defendant O'Brien discussed the matter with Defendant Crump and the two considered moving Plaintiff to a female therapist.  The matter was also discussed with the Psychological Program Manager.  [Id. at ¶ 10; Doc. 47-4 at ¶ 7].  It was decided, from a therapeutic standpoint, that it would be best for Plaintiff to address her concerns with males in the safety of a therapeutic environment with a male therapist.  [Id.].  Plaintiff was told about this decision and she decided to continue working with Defendant O'Brien.  [Doc. 47-3 at ¶ 11].  Despite her ongoing complaints about seeing a male therapist, she frequently requested contact with Defendant O'Brien.  Between February 2, 2017 and May 31, 2017, Plaintiff was seen by Defendant O'Brien ten (10) times.  [Id.].

On April 28, 2017, Plaintiff tried to dictate what type of medication she would be prescribed by her psychiatrist. [Id. at ¶ 9]. When Plaintiff's request was denied, because it was not clinically appropriate, Plaintiff stated that she no longer needed psychiatric services. She was, therefore, discontinued from tele-psychiatry. [Id.]. On May 31, 2017, Plaintiff voluntarily removed herself from receiving mental health care at Alexander.[4] [Id. at ¶ 11].

On July 6, 2017, Defendant Crump met with Plaintiff at Plaintiff's request for a mental health referral. [Doc. 47-4 at ¶ 10]. At this session, Plaintiff stated that she regretted removing herself from mental health care at Alexander. [Id.]. Crump and Plaintiff also reviewed Plaintiff's previous request to work with a male therapist. [Id.]. Plaintiff admitted that avoiding male therapists was fostering her mistrust of males in general. Plaintiff agreed that addressing her past abuse issues with a male therapist could help her learn to build trust with males, which would help her outside the therapeutic environment. [Id.]. Plaintiff was then placed with a male therapist. [Id.]. On May 15, 2018, Plaintiff was transferred to Lanesboro Correctional Institution and assigned to a male therapist there. She was able

---

[4] Thus, it appears that the care Plaintiff was receiving from a psychiatrist through telemedicine was discontinued at Plaintiff's request in April 2017 and then, in May 2017, the care Plaintiff was receiving from Defendant O'Brien, as Plaintiff's primary therapist, was voluntarily discontinued by Plaintiff. [See Doc. 47-3 at ¶¶ 11-12].

to develop a positive therapeutic rapport with the male therapist at Lanesboro and even stated that she was surprised that the therapy was going so well. [Id. at ¶ 11].

Defendant Harris is a Registered Nurse who cares for offenders at Alexander. She has been employed by the NCDPS since 2007. [Doc. 47-1 at ¶¶ 2-3: Harris Aff.]. On August 22, 2017, during a medical visit with Defendant Harris, Plaintiff asked Harris to investigate the status of Plaintiff's lace-up ankle braces. [Doc. 47-1 at ¶ 6; Doc. 47-2 at 14]. Thereafter, Defendant Harris sought clarification of Plaintiff's medical duty status for ankle braces, medical headphones, and other orders. [Id. at ¶ 6; Doc. 47-2 at 11-12, 14]. The records showed that various orders and equipment, including the ankle braces, had been cancelled at Plaintiff's previous institution. [Id. at ¶ 7]. The ankle braces had been discontinued in July 2016 for "offender misuse" after nursing staff witnessed Plaintiff playing basketball without difficulty while not wearing her braces. [Id. at ¶ 8; Doc. 47-2 at 1; see Doc. 47-2 at 6 ("Nursing reports: "today at approximately 0750 witnessed inmate playing a game of one[-on]-one basketball with another inmate without supportive brace on bilateral extremities as ordered.)]. The records showed that Plaintiff was not allowed medical headphones because they are

only allowed for hearing impaired inmates who use hearing aids. [Doc. 47-2 at 11].

Defendant Harris told Plaintiff that the order for ankle braces had been discontinued after nursing staff at Plaintiff's previous institution reported observing her playing basketball without them. [Doc. 47-1 at ¶ 9]. Plaintiff then repeatedly requested that she be issued ankle braces. As a nurse, Defendant Harris was not responsible for decisions regarding medical interventions, including ankle braces. [Id. at ¶ 7]. Defendant Harris referred Plaintiff's request to a Provider and a UR Request was made. [Id.]. The UR Request was deferred. Plaintiff did not qualify for the braces because she was active, playing basketball without impairment, and able to do all activities of daily living (ADLs). [Id. at ¶ 10; Doc. 47-2 at 17]. On October 3, 2017, at an office visit for Plaintiff's asthma, Defendant Harris told Plaintiff that that UR Request had not been approved. [Id. at ¶ 11; Doc. 47-2 at 16]. The same day, Defendant Harris explained to Plaintiff that, while Plaintiff does have a diagnosis of degenerative disc disease, it is important for Plaintiff to remain active and that climbing stairs was beneficial to her circulation, posture, heart, and muscle strength.[5] [Id. at ¶ 12].

---

[5] It appears that Plaintiff had unsuccessfully sought a limitation that would have relieved her from having to climb stairs in prison.

13

## III. DISCUSSION

Defendants Crump, Fox, Harris, and O'Brien argue that they are entitled to summary judgment because the record shows that they were not deliberately indifferent to Plaintiff's serious medical needs and because they have sovereign immunity and qualified immunity against Plaintiff's claims.

### A. Eighth Amendment

Claims under 42 U.S.C. § 1983 based on an alleged lack of or inappropriate medical treatment fall within the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To state a claim under the Eighth Amendment, a plaintiff must show a "deliberate indifference to serious medical needs" of the inmate. Id. "Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001) (citations omitted). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

Allegations that might be sufficient to support negligence and medical malpractice claims do not, without more, rise to the level of a cognizable Section 1983 claim. Estelle, 429 U.S. at 106; Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it."). "[E]ven if a prison doctor is mistaken or negligent in his diagnosis or treatment, no constitutional issue is raised absent evidence of abuse, intentional mistreatment, or denial of medical attention." Stokes v. Hurdle, 393 F. Supp. 757, 762 (D. Md. 1975), aff'd, 535 F.2d 1250 (4th Cir. 1976). Further, the constitutional right is to medical care. No right exists to the type or scope of care desired by the individual prisoner. Id. at 763. Therefore, a disagreement "between an inmate and a physician over the inmate's proper medical care [does] not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (dismissing the plaintiff's § 1983 claim against a defendant physician for allegedly discharging the plaintiff too early from a medical clinic, as such claim did not rise to the level of deliberate indifference but would, "at most, constitute a claim of medical malpractice").

To succeed on a claim against Defendants under the Eighth Amendment, Plaintiff must show a deliberate indifference to Plaintiff's serious medical needs. Estelle, 429 U.S. at 104. "Courts treat an inmate's

mental health claims just as seriously as any physical health claims." DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018). To establish such indifference, the "treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscious or to be intolerable to fundamental fairness." Miltier, 896 F.2d at 851. Absent exceptional circumstances, a disagreement between a prisoner and a healthcare provider over the prisoner's proper medical care is not grounds for a § 1983 claim. Wright, 766 F.2d at 849.

### 1. Defendants Crump and O'Brien

The forecast of evidence does not show that Defendants Crump and O'Brien disregarded any of Plaintiff's serious physical or mental health needs. See Young, 238 F.3d at 575-76. Defendants Crump and O'Brien considered and reviewed Plaintiff's mental health needs and made an intentional decision regarding Plaintiff's mental health care that they believed was in her best interest. Plaintiff's disagreement with their decision to maintain her treatment with a male therapist is not deliberate indifference to any serious medical need of Plaintiff. A disagreement between an inmate and a physician over the inmate's proper medical care does not support a § 1983 claim absent the showing of exceptional circumstances. Wright, 766 F.2d at 849. And there is no forecast of evidence supporting any such

16

exceptional circumstances here. As such, there remains no genuine issue for trial as to Defendants Crump and O'Brien and the Court will dismiss these Defendants.

### 2. Defendants Fox and Harris

The forecast of evidence is similarly insufficient to support claims of deliberate indifference against Defendants Harris or Fox. Plaintiff alleged that Defendant Fox denied Plaintiff medical headphones and lied in response to Plaintiff's grievance about the headphones, claiming that a UR Request for the headphones in 2015 was denied. The forecast of evidence, however, shows that only prisoners who use hearing aids are allowed medical headphones. There is no forecast of evidence that Plaintiff qualified for medical headphones or had any other serious medical need related to medical headphones that was ignored. Moreover, there is no forecast of evidence that Defendant Fox had any involvement in whether medical headphones were provided to Plaintiff or that Defendant Fox lied in response to Plaintiff's grievance.

Plaintiff has also failed to forecast any evidence of deliberate indifference by Defendant Harris. Plaintiff alleged that a UR Request for Plaintiff's ankle braces had been approved and that Defendant Harris lied, claiming the braces had not been approved. The forecast of evidence,

including Plaintiff's own medical record, completely contradicts Plaintiff's allegations against Defendant Harris. Defendant Harris did not lie about UR Request approval. The order for Plaintiff's ankle braces was discontinued at a different correctional facility because Plaintiff did not wear them while playing basketball, as ordered. After Defendant Harris told Plaintiff that the order had been discontinued, Plaintiff again requested ankle braces and Defendant Harris referred the matter to a Provider. A UR Request was made, which was denied because Plaintiff was not eligible for ankle braces. There is, therefore, no genuine issue for trial on Plaintiff's claims against Defendants Fox or Harris. The Court will dismiss these Defendants.

### 3. Jane Does #1-4

The allegations against Jane Does #1-4, who have been since identified as Defendants Tilley, Lipford, Accord, and Norman, respectively, are identical to the allegations against Defendant Byrd. Namely, Plaintiff alleged that the Jane Doe Defendants were deliberately indifferent for refusing Plaintiff medical headphones. The Court dismissed Plaintiff's claim against Defendant Byrd because Plaintiff failed to state a claim for relief against her. The Court will, therefore, also dismiss the Jane Doe Defendants for the same reason. Moreover, the claim against Defendant Fox was based, in large part, on her alleged denial of medical headphones to Plaintiff. This

18

claim was dismissed because the forecast of evidence showed no serious medical need and no deliberate indifference relative to medical headphones. As such, Plaintiff's claims against the Jane Doe Defendants would have been subject to dismissal at summary judgment in any event.

### 4. John Does #1 through #4

Plaintiff alleged that these Defendants refused to address Plaintiff's bad back, bad ankles, and poor circulation. Plaintiff made no effort to identify these Defendants or to prosecute her claims against them. In any event, the forecast of evidence shows that these conditions were generally addressed by Plaintiff's healthcare providers and that Plaintiff was advised to continue certain activities to improve her muscle strength and circulation.

The allegations against John Doe #3 include a claim that John Doe #3 refused to issue Plaintiff medical headphones. Accordingly, for the same reasons that the Plaintiff's claims against Defendant Fox and Jane Does #1 through #4 fail, Plaintiff's claim against John Doe #3 also fails.

Finally, the allegations and forecast of evidence against John Doe #4 are identical to those against Defendants Crump and O'Brien. Namely, Plaintiff alleged that John Doe #4 was a psychologist at Alexander and that Plaintiff told him that she was uncomfortable working with a male therapist. Because the forecast of evidence shows that Plaintiff's concerns on this

19

issue were addressed in Plaintiff's best interest by Defendants Crump and O'Brien, the Court will dismiss Plaintiff's identical claims against John Doe #4.[6]

## B. Sovereign Immunity

Plaintiff sues the Defendants for conduct allegedly occurring while the Defendants were acting in their individual and official capacities. A suit against a state official in his official capacity is construed as against the state itself. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). It is well settled that neither a state nor its officials acting in their official capacities are "persons" subject to suit under 42 U.S.C. § 1983. Id.; see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978). Moreover, the Eleventh Amendment generally bars lawsuits by citizens against non-consenting states brought either in state or federal courts. See Alden v. Maine, 527 U.S. 706, 712-13 (1999); Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996).

Although Congress may abrogate the states' sovereign immunity, it has not chosen to do so for claims under 42 U.S.C. § 1983. See Quern v. Jordan, 440 U.S. 332, 343 (1979). Likewise, North Carolina has not waived

---

[6] Notwithstanding the failure of service, the Court will dismiss the Doe Defendants with prejudice because the claims against them arose in 2017 and are barred by the statue of limitations.

its sovereign immunity by consenting to be sued in federal court for claims brought under 42 U.S.C. § 1983. See generally, Mary's House, Inc. v. North Carolina, 976 F.Supp.2d 691, 697 (M.D.N.C. 2013) (claim under 42 U.S.C. § 1983 barred by sovereign immunity of North Carolina). As such, Defendants are entitled to summary judgment on Plaintiff's official capacity claims and the Court will grant the pending motion for summary judgment on this ground.

## C. Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the

law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Here, because Plaintiff has not forecasted evidence that Defendants Crump, Fox, Harris, and O'Brien violated a constitutional right, these Defendants are entitled to qualified immunity on Plaintiff's individual capacity claims against them. As such, the Court grants summary judgment on this ground as well.

## IV. CONCLUSION

For the reasons stated herein, the Defendants' Motion for Summary Judgment will be granted, and the Doe Defendants will be dismissed.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion for Summary Judgment [Doc. 45] is **GRANTED** and the Plaintiff's claims against Defendants Fox, Crump, Harris, and O'Brien are hereby **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Plaintiff's claims against Yutokia T. Lipford (identified in the Complaint as Jane Doe #2), Jane Doe Defendants #1, 3, and 4, and John Doe Defendants #1-4 are hereby **DISMISSED WITH PREJUDICE**.

The Clerk is respectfully instructed to update the docket in this matter to (1) reflect the correct spelling of Defendant O'Brien's last name and (2) substitute Yutokia T. Lipford for Jane Doe #2.

The Clerk is further respectfully directed to close this civil action.

**IT IS SO ORDERED.**

Martin Reidinger
Chief United States District Judge